**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RICHARD HALLORAN,<br><br>              Plaintiff,<br>    v.<br><br>JEREMIAH BOHANNON AND FROGGER, LLC,<br><br>              Defendants. | Civil Action No.:  1:10-CV-10317-RWZ |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND CLAIM CONSTRUCTION OF U.S. PATENT NO. 6,112,357**

Per Fed. R. Civ. P. 56 and Local Rule 56.1, Defendants Jeremiah Bohannon and Frogger LLC (collectively, "Frogger"), respectfully submit this Memorandum in support of their motion for summary judgment and claim construction of non-infringement of U.S. Patent No. 6,112,357 ("the '357 patent").

## I.     INTRODUCTION

This is a patent infringement dispute over a golf brush used for cleaning debris from golf clubs and golf shoes. Frogger's only accused product, its award-winning BrushPro®, does not infringe the '357 patent because it plainly does not meet the "means for removably fastening the second end of the tether to the brush member" limitation required by all the asserted claims. Instead, Frogger's BrushPro® is attached to a second end of a tether with a *non-removable* structure that is substantially different than required by the asserted claims. Because there is no dispute of fact as to the structure and design of Frogger's BrushPro® product and there is no further discovery needed on this limitation, summary judgment is appropriate.

## II.   SUMMARY OF MATERIAL FACTS[1]

The '357 patent, titled "Extendible Golf Brush," issued on September 5, 2000 to Richard Halloran.  UMF 1.[2]  The alleged invention of the '357 patent is disclosed in a single preferred embodiment:



UMF 2.

---

[1] Pursuant to Local Rule 56.1, this Motion is supported by a concurrently filed statement of undisputed material facts, which is summarized as follows.

[2] References to "UMF" followed by a number are to the numbered undisputed facts in the Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,112,357, which contains supporting cites to the record.

Although Halloran has not yet identified which claims he is asserting from the '357 patent, all 17 of the claims contain the limitation of a "means for removably fastening the second end of the tether to the brush member." UMF 3. This element is first identified in Figure 1:



(UMF 4) and then further detailed in Figure 2:



(UMF 5) [Figure 4, annotated with element descriptions].

The prior art cited during the prosecution of the '357 patent in the U.S. Patent and

Trademark Office shows a golf brush that does not have a "means for removably fastening the second end of the tether to the brush member." UMF 6. In particular, U.S. Patent No. 5,815,873 ("the Jones patent"), was cited by the Examiner during the prosecution of the '357 patent. UMF 7. The Jones patent discloses a golf brush that is attached with a key ring to a tether housing. UMF 8. The tether housing includes a clip which can be removably fastened to a golf bag or other exterior item. *Id.* The Jones patent further includes the prior art feature of fastening a second end of the tether to a brush that is non-removable:



UMF 9 (annotated to show relevant structure). The '357 patent criticized this prior art for having a brush that was not being readily removable from the tether. UMF 11 ("Still further, many prior art golf brushes are less than ideal because the brush portion of the device is not readily detachable from the remainder of the device.").

Frogger is a California-based company that markets and sells golf accessories. Its

products have been widely received in the golf-industry, and it has won "Best New Product" at the PGA Golf Merchandise Show for the past two years.  Halloran has accused Frogger's BrushPro® of infringing the '357 patent.  UMF 12. Photographs of the BrushPro® product and the accused structure is shown below.





UMF 13.  As depicted above, the second end of the tether of the BrushPro® is connected to a triangular metal element that is not removable.  UMF 14.  A key-ring shaped element is attached

to the triangular metal element, and the brush portion of Frogger's BrushPro® is attached to the key ring element as depicted in the prior art.  UMF 15.  The BrushPro® does not have a fastening mouth structure with structural elements such as a first fastening jaw; second fastening jaw (66); pivotable first hinge (68); pivotable second hinge (70); male member (72); and/or a female member (74) that are attached to the second end of the tether.  UMF 16.  The triangular metal element of the BrushPro® that forms the second end of the tether cannot be readily removed.  UMF 17.  The only way to remove the triangular metal element that is attached to the second end of the tether is to break the accused device.  *Id.*

### III.   LEGAL STANDARDS

**A.   Non-Infringement Standards**

Determining whether a product infringes a patent is a two-step process.  First, the Court construes the terms of the claims as a matter of law, and second, the properly construed claims are compared to the accused product.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976-79 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  The patentee has the burden of proving infringement by a preponderance of the evidence.  *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002).

Infringement may be "literal" or under the "doctrine of equivalents."  To literally infringe a patent claim, an accused product or device must meet every limitation of the claim *exactly*. *Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1449 (Fed. Cir. 1991).  To infringe under the doctrine of equivalents, the accused product or device must contain an equivalent to each claim limitation that is not literally present.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29-30 (1997).  A feature may be found to be equivalent to a claim limitation if it performs substantially the same function, in substantially the same way, to achieve substantially

the same result as the claim limitation. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950). Equivalence is determined on an element-by-element basis. In other words, the question is not whether the accused product "as a whole" is equivalent to the claim, but whether each missing limitation is satisfied by a corresponding equivalent element in the accused product. *Warner-Jenkinson*, 520 U.S. at 29 ("each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole").

The doctrine of equivalents cannot be applied to allow a patent claim to encompass subject matter that could not have been patented, nor can it be used to ignore the actual language of the patent. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1366-67 (Fed. Cir. 1999). Thus, the doctrine of equivalents cannot allow a patent to encompass subject matter existing in the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 684 (Fed. Cir. 1990); *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1577 (Fed. Cir. 1994).

Infringement may only be found if every limitation set forth in the asserted claim can be found in the accused device. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990). There can be no infringement as a matter of law if even a single claim limitation is absent from the accused device. *Id*. at 798; *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991).

**B.     Claim Construction Standards**

In construing patent claims, courts should examine the words of the claim from the perspective of one of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). "In some cases, the ordinary meaning of claim language as understood by a

person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citation omitted).

A court should next review the "intrinsic" evidence, namely the specification, the prosecution history of the patent in the U.S. Patent and Trademark Office, and the prior art cited in the prosecution history. *Id.* at 1313-17. Although the specification should be consulted to understand the meaning of claim terms, the details of particular embodiments described in the specification, but not found in the language of the claim, may not be read into the claim. *See TurboCare v. General Elec. Co.*, 264 F.3d 1111, 1123 (Fed. Cir. 2001). In addition to intrinsic evidence, the Court may also "rely on extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (citations and internal quotations omitted). Extrinsic evidence, however, is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (citations and internal quotations omitted).

The asserted claim limitation that is the subject of this motion is a means-plus-function element per 35 U.S.C. § 112, ¶ 6. That section of the patent statute provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding, structure, material, or acts described in the specification and equivalents thereof.

Means-plus-function elements are construed by first identifying the function explicitly recited in the claim, and then identifying the corresponding structure disclosed in the specification that performs the recited function. *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1369 (Fed. Cir. 2001); *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360-61 (Fed. Cir. 2000).

Means-plus-function limitations are construed to encompass those structures expressly

disclosed in the specification as performing the recited function, as well as equivalent structures that perform the identical function. *Asyst Techs.*, 268 F.3d at 1369; *Kemco Sales*, 208 F.3d at 1364. The "equivalents" covered under 35 U.S.C. § 112, ¶ 6 are known as "statutory equivalents" or "structural equivalents," as distinguished from equivalents covered under the judicially created doctrine of equivalents. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435-36 (Fed. Cir. 2000).

### C.    Summary Judgment Standards

Summary judgment is warranted when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, all facts are to be viewed, and all reasonable inferences drawn, in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Because patent cases often turn on questions of claim construction, which is a matter of law, patent cases are particularly amenable to summary disposition. *See Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998); *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997).

## IV.    FROGGER'S BRUSHPRO® DOES NOT MEET THE "MEANS FOR REMOVABLY FASTENING THE SECOND END OF THE TETHER TO THE BRUSH MEMBER" CLAIM LIMITATION

### A.    The Asserted Claims

All of the asserted claims of the '357 patent require a "means for removably fastening the second end of the tether to the brush member," i.e., structures that allow the brush to be readily removable from the tether portion of the brush. '357 Patent at 2:7-14, 3:4-7, 4:27-29, 4:58-5:12, 5:42-47. Since Frogger's BrushPro® does not allow for such a readily removable connection, it cannot be found to have infringed the asserted claims of the '357 patent.

### B.    When Properly Construed, the "Means for Removably Fastening" Limitation

### Requires Structures that Allow for Readily Removing a Brush from the Second End of a Tether

For the '357 patent, the claim limitation "means for removably fastening the second end of the tether to the brush member," is written in means-plus-function form and is subject to 35 U.S.C. § 112, ¶ 6.  When a claim uses the term "means" to describe a limitation, there is a presumption that the inventor used the term to invoke § 112, ¶ 6. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1367, 1375 (Fed. Cir. 2003). When a patentee drafts a claim limitation in "means-plus-function" format, the claim limitation "shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof ." 35 U.S.C. § 112, ¶ 6; *see also Golight Inc. v. Wal-Mart Stores Inc.*, 355 F.3d 1327, 1333-34 (Fed. Cir. 2004) (holding that means-plus-function limitations should be interpreted in a manner consistent with the specification disclosure).

The function of this claim element is "removably fastening the second end of the tether to the brush member."  The '357 patent delineates eight structural elements in the "means for removably fastening the second end," including:

> (a) base member (62);
> (b) first fastening jaw (64) ;
> (c) second fastening jaw (66);
> (d) pivotable first hinge (68);
> (e) pivotable second hinge (70);
> (f) male member (72); and
> (g) female member (74).

*See* '357 Patent at 2:47-3:7 (summary of invention) and Abstract ("The mechanism for removably fastening the second end of the tether to the brush member may comprise a fastening mouth with a base member and first and second fastening jaws hingedly connected to the base member for capturing the brush member. Distal ends of the first and second fastening jaws can be selectively fastened together by a male member in combination with a female member. The

brush member may be fastened directly to the fastening mouth or it may be coupled thereto by a ring"); *see also* Fig. 4, 4:39-40, 4:58-5:12.  Indeed, the only embodiments described in the patent specifically indicate that the second end must have the jaws-like structure and male/female members that form a "fastening mouth." *Id.*  The '357 states that the structures depicted in Fig. 4 and identified above are the present invention.  '357 Patent at 3:61-62 ("FIG. 4 is a view in side elevation of a fastening mouth *according to the present invention*.") (emphasis added).

That the above identified structural elements are described as the "present invention" and in the section "summary of invention" is further evidence that the structural elements must include at least the above listed items.  *See, e.g. Superguide Corp. v. DirecTV Enters. Inc.*, 358 F.3d 870 (Fed. Cir. 2004) (holding that claims were narrowed because description of figures included phrase "according to the present invention."); *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1383 (Fed. Cir. 2009) ("the use of the words 'the present invention' can be read to limit the invention to what is described as such."); *citing Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006); *see Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010) (holding that the reference to the system of the present invention strongly suggests that the claimed re-centering command requires a manual input); *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1379 (Fed. Cir. 2005) (noting that "when the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment"); *Honeywell*, 452 F.3d at 1318 (construing claim term to include fuel filter because "[o]n at least four occasions, the written description refers to the fuel filter as 'this invention' or 'the present invention'"); *SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys. Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) ("the characterization of [a limitation] as part of the 'present invention' is strong evidence that the claims should not be

read to encompass the opposite structure.").

Since the specification defines what is meant by this means-plus-function limitation for the purposes of the claimed invention, the Court should interpret the limitation as having that meaning. *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003). The point of this requirement is to limit the scope of the claim to the structure and its equivalents and thus avoid purely functional claiming. *Id.*

## C.     The Accused Product Does Not Have the Required Structural Elements or Their Equivalents

The BrushPro® simply and quite clearly does not have structural elements (b)-(g) identified above, and therefore cannot possibly literally infringe the '357 patent. There is no fastening mouth structure as described in the '357 patent and there are no jaw elements, no male/female elements, and no hinges which allow the brush on the BrushPro® to be readily removed from the second end of the tether element. There is no dispute as to the construction and configuration of the BrushPro®. The brush element of the BrushPro® is connected to the tether by a triangular metal element that does not have a jaws-like structure and is not readily removable. Indeed, the only way to remove the triangular metal element that is attached to the second end of the tether is to break the accused device. Thus, under any reasonable interpretation there can be no literal infringement of the asserted claims.

The BrushPro® also does not infringe under the doctrine of equivalents. First, Halloran cannot "invoke the doctrine of equivalents to 'embrace a structure that was specifically excluded from [the patent] claims.'" *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001) (citation omitted). Halloran's anticipated assertion of infringement under the doctrine of equivalents makes no sense because "removably fastening" cannot be the same thing as not removably fastening. *See Asyst Techs.,*

*Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (holding that "the district court was correct in ruling that the doctrine of equivalents cannot be extended to reach an 'unmounted' system . . . without vitiating the 'mounted on' limitation altogether"); *Hilton-Davis Chem. Co. v. Warner-Jenkinson*, 520 U.S. 1153 (1997) (a court may not apply the doctrine of equivalents where doing so would effectively eliminate a claim element in its entirety).

"The doctrine of equivalents is not a license to ignore claim limitations." *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1378 (Fed. Cir. 2008) (citations omitted). The doctrine of equivalents is intended to reach those who make "unimportant and insubstantial changes and substitutions in the patent" that add nothing to the invention and serve only to evade the literal scope of the claim language. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950); *Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004), *cert. denied,* 545 U.S. 954 (2005).

Reading this means-plus-function element and its disclosed structure onto the BrushPro® under the doctrine of equivalents would entirely vitiate the limitation from the asserted claims because it would equate a structure that allows a golf brush to be removably fastened to the second end of a tether as equivalent to a structure that does not allow the ready removal from the second end of the tether as embodied in the BrushPro®. The Federal Circuit explained in *DePuy Spine, Inc. v. Medtrtonic Sofamor Danek, Inc.* that "the all elements rule informs a doctrine of equivalents analysis," and the guidance provided by that rule can foreclose a theory of infringement based on the doctrine of equivalents when "a limitation would be read completely out of the claim [that is, vitiated]." 469 F.3d 1005, 1017 (Fed. Cir. 2006); *see also Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) ("If a theory of equivalence would vitiate a claim limitation, however, then there can be no infringement under the doctrine of equivalents as

a matter of law."); *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1321-22 (Fed. Cir. 2002) (holding that a connection "above" two plugs is not equivalent to a connection "between the two plugs," since such a finding "would vitiate that limitation").

Second, the non-removable BrushPro® structure is *substantially different from* the means for *removably fastening the second end* of the asserted claims of Halloran's '357 patent. It is apparent that Halloran's claimed invention was, in part, designed to allow the replacement of the entire brush when needed. '357 Patent at 2:11-14 ("A related object of the invention is to provide an extendible golf brush that can be separated into constituent parts to allow a user to remove and replace individual parts of the golf brush as circumstances require."). The BrushPro® solves the problem of replacing worn brush bristles in a substantially different manner in allowing the brush head itself to be replaced rather than the entire brush. Moreover, the function of the non-removable triangular element of the BrushPro® is to render the brush not readily removable in contrast to Halloran's alleged invention which was to allow the ready removal of the brush element. Because the BrushPro® does not contain a structure that accomplishes an identical function in substantially the same way, it cannot be found to be infringing under the doctrine of equivalents.

Third, the prior art cited during the prosecution of the '357 patent in the U.S. Patent and Trademark Office shows that Halloran did not invent, and its patent cannot be extended to cover, a non-removable means for attaching a brush to the second end of the tether. In particular, the Jones patent teaches that a "stop member (24) is provided with a hoe (not shown) through which linking member (20) is connected thereto" and "the brush (10) is connected via handle hole (19) to a linking member (20) which bridges the gap between the recoil housing (22) and the brush (10)." Jones patent at 3:40-49. Thus, the Jones patent describes a prior art golf brush attached to

a tether in a virtually identical manner as with the BrushPro®.  Allowing Halloran to claim that the BrushPro® infringes the asserted claims of the '357 patent under the doctrine of equivalents would be an impermissible ensnarement of the prior art.  *See Wilson Sporting Goods Co.*, 904 F.2d at 684 ("[A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims.").

Fourth, the doctrine of equivalents cannot be used to expand the literal scope of a claim to include subject matter that is disclosed in the specification but not especially claimed. *Johnson & Johnston Assoc., Inc. v. R.E. Serv. Co., Inc.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) ("when a patent drafter discloses but declines to claim subject matter, as in this case, this action dedicates that unclaimed subject matter to the public.  Application of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would conflict with the primacy of the claims in defining the scope of the patentee's exclusive right.)

Halloran's patent explicitly disclaimed this non-removable structure as:

> ***less than ideal*** because the brush portion of the device is not readily detachable from the remainder of the device. \*\*\* As a result, when the brush portion of the golf brush must be replaced in either such device, the golfer is compelled to replace the entire device instead of only the brush portion, which certainly would be preferred.

'357 Patent at 1:43-51 (emphasis added).  Where, as here, the plain language of the claims disclaims a disclosed embodiment, namely, a structure of fastening a non-removable element to the second end of the tether, the embodiment is unclaimed subject matter. *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562-63 (Fed. Cir. 1991) (holding that claim excluded the described embodiment, which was deemed dedicated to the public); *PSC Computer Prods., Inc. v. Foxconn Int'l*, 355 F.3d 1353, 1360 (Fed. Cir. 2004) (holding that a specification does not necessarily have to provide an express disclosure of an alleged equivalent to create a public dedication, if

one of ordinary skill in the art when reading the patent specification would understand that the specification identified and disclosed the alleged equivalent.); *Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1359 (Fed. Cir. 2006). "The patentee, rather than the public, must bear the burden of inadvertent errors in the patent – including inadvertent dedications." *Id.* at 1361.

Accordingly, since the BrushPro® lacks the "means for removably fastening the second end of the tether to the brush member" limitation, both literally and under the doctrine of equivalents, Frogger does not infringe the asserted claims of the '357 patent, and Plaintiffs are entitled to summary judgment of non-infringement of the '357 patent as a matter of law.

## IV. CONCLUSION

For the above stated reasons, Plaintiffs respectfully request that the Court grant the foregoing motion for summary judgment of non-infringement of the '357 patent.

Dated: October 29, 2010           */s/ Andrea B. Reed*

                                            Jeffrey L. Snow (BBO # 566388)
                                            Andrea B. Reed (BBO # 672321)
                                            K&L Gates LLP
                                            State Street Financial Center
                                            One Lincoln Street
                                            Boston, Massachusetts 02111-2950
                                            Tel.: 617.261.3100
                                            Fax: 617.261.3175
                                            jeffrey.snow@klgates.com
                                            andrea.reed@klgates.com

                                            Harold H. Davis
                                            K&L Gates LLP
                                            Four Embarcadero Center
                                            Suite 1200
                                            San Francisco, CA 94111
                                            Tel.: 415.882.8200
                                            Fax.: 415.882.8200
                                            harold.davis@klgates.com

                                            Attorneys for Defendants FROGGER LLC and
                                            JEREMIAH BOHANNON

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the electronic case filing ("ECF") system on October 29, 2010 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and a paper copy will be sent by mail to any non-registered participants.

                                            */s/ Andrea B. Reed*
                                            Andrea B. Reed (BBO # 672321)